THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARY WALLSKOG, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:03-CV-125RM |
| ) | |
| INDIANA DEPARTMENT of ) | |
| CORRECTIONS, et al. ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Mary Wallskog sues her former employer and supervisor for retaliation and racial discrimination in violation of Title VII of the Civil Rights Act of 1964. The defendants seek summary judgment and, for the reasons that follow, the court grants the defendants' motion on all claims.[1]

FACTS

The following facts are taken from the summary judgment record, and are viewed as favorably to Ms. Wallskog as is reasonable. Ms. Wallskog became employed with the Indiana Department of Corrections as the affirmative action

---

[1] Ms. Wallskog's complaint also alleges violations under the First Amendment and Equal Protection Clause, breach of contract, and racial harassment under Title VII. Her brief in opposition to summary judgment states "she has legally insufficient evidence to withstand Defendant's Motion for Summary Judgment as to her breach of contract claim and [F]irst [A]mendment claim," so she has conceded these claims. She didn't advance any argument supporting her racial harassment or Equal Protection claims, so she has also waived these claims.  See Walker v. Mueller Industries, Inc., 408 F.3d 328, 330-331 (7th Cir 2005).

coordinator for the Westville Correctional Facility in June 2001; defendant Harry Howe was her direct supervisor.

As an affirmative action coordinator, Ms. Wallskog was a state merit employee and subject to the state pay plan. Her primary responsibility was investigating allegations of discrimination filed internally or through the EEOC. She also chaired the affirmative action coordinator committee, taught and promoted fairness and awareness regarding racial and gender issues within the facility, and was considered the American with Disabilities Act and Equal Employment Opportunity coordinator. Ms. Wallskog's duties included performing quality assurance work, tracking medical disabilities, completing an annual affirmative action report, and maintaining numerous files and reports. Affirmative action coordinator is a professional, administrative, and technical class level 4 position under the state job classification system. Ms. Wallskog was the only affirmative action coordinator at the Westville facility.

Ms. Wallskog believed she met the DOC's legitimate performance expectations given that her superiors told her she was doing an "outstanding job." She also received performance evaluations, and from January 2001 to July 2001, her work was rated at satisfactory or above. Mr. Howe testified at his deposition that he didn't have any problems with her performance, though she had "behavior problems."

Mr. Howe has been the Westville facility's personnel director since 1998. His primary duties include overseeing the personnel functions for the facility including

hiring, promotions, employee relations, family medical leave, workers compensation, and affirmative action.

From July 2001 to August 2001, Ms. Wallskog investigated a complaint brought by fellow employee, Shirl Meyer, against Mr. Howe for gender discrimination.[2] Ms. Wallskog could not substantiate Ms. Meyer's allegation, but found Mr. Howe's behavior toward his subordinates was questionable and varied from employee to employee, and so recommended to Superintendent Herbert Newirk that Mr. Howe attend appropriate training.

Ms. Wallskog says she was unable to complete the investigation because Mr. Howe directed her to close the investigation and turn over the information to Superintendent Newirk. Ms. Wallskog's EEOC complaint, though, says the Affirmative Action Central Office in Indianapolis directed her to close out the case. Mr. Howe knew of Ms. Meyer's complaint, but says he never instructed Ms. Wallskog as to how to conduct the investigation, never criticized her regarding the investigation, and that his role was to ensure that an adequate investigation was performed. Still, Mr. Howe also testified he wasn't happy with Ms. Wallskog's findings, and stated in a letter to Superintendent Newirk, "I feel that the letter Ms. Wallskog wrote is unfair, biased, and totally inappropriate when viewed in [ ] light of the truth."

In August 2002, Ms. Wallskog filed claims of race discrimination and

---

[2]While Ms. Myer's complaint makes no indication that she was discriminated against because of her race, gender, national origin, religion, Mr. Howe testified that Ms. Myer's complaint was based on gender discrimination.

3

retaliation against Mr. Howe with the Michigan City Human Rights Commission. Ms. Wallskog previously had filed an internal merit complaint against Mr. Howe alleging he hadn't increased her salary as promised, refused to pay for hours worked, threatened to reduce her salary, reprimanded her, and treated her unequally.[3]

Regional coordinators Diana Gore and Jayne Brown conducted an affirmative action audit in September 2002. Affirmative action division director Lonnise Roberson ordered the audit because of concerns regarding Ms. Wallskog: (1) she had 9 overdue reports, (2) a DOC attorney reported that he contacted witnesses who denied hearing a superior use racial slurs as reported in Ms. Wallskog's affirmative action investigative report, and (3) Superintendent Edwin Buss's concerns regarding her job performance.[4] Ms. Roberson informed Mr. Howe that the audit was being performed because there were "concerns about some cases that were behind" and "complaints ... received ... about the way she [Mary] conducted some of her investigations or interviewed witnesses."

---

[3]Neither party has submitted a copy of Ms. Wallskog's merit complaint, but the defendants don't object to Ms. Wallskog's characterization of her complaint in her May 2002 letter to Division Director Bruce Baxter.

[4]Ms. Wallskog says there is a disputed issue of fact as to whether the audit was justified, that is, whether it was really conducted based upon concerns regarding Ms. Wallskog's job performance since she had received previous satisfactory evaluations. The court cannot agree. Ms. Wallskog's satisfactory evaluations from January 2001 through July 2001 are not inconsistent with subsequent concerns regarding her performance nearly a year later. Certainly Ms. Wallskog's job performance may have improved, declined, or remained consistent over the next 12 months, but nothing in the summary judgment record refutes the statements contained in the audit report regarding concerns of her work performance in the months leading up to the audit.

Mr. Howe had no role in facilitating the initiation of the audit and hadn't complained about Ms. Wallskog before the audit. Ms. Brown and Ms. Gore, though, spoke with Mr. Howe during the course of the investigation, and recommended that Ms. Wallskog be removed from the position of affirmative action coordinator, at least in part, because Ms. Wallskog "complains to whomever will listen about Mr. Howe and circumvents his office frequently," as well as her lack of respect for Mr. Howe and her constant challenges to his authority. Other reasons for the recommendation included inaccuracies in Ms. Wallskog's investigative report regarding a Captain Keefer, findings of inappropriate interview techniques (leading questions, choosing sides, and accusatory questioning), her difficulty in separating affirmative action issues from management/supervisory issues that resulted in delay and misuse of overtime, and a lack of organization in maintaining records and documentation of her investigations.

Following the audit, Superintendent Buss sent a letter to Ms. Wallskog informing her she had been reassigned to an administrative assistant position because she possessed the skills to perform those duties and responsibilities in a way that would benefit the facility's pre-release program and because of the number of problems with her performance revealed by the audit. Although Superintendent Buss had the "final word" on Ms. Wallskog's reassignment and had signed her transfer letter, Mr. Howe drafted the letter. Ms. Wallskog claims it was really Mr. Howe who made the decision to reassign her because Superintendent Buss told her that he was "supporting [Mr.] Howe's decision." She

5

doesn't believe, though, that Ms. Brown, Ms. Gore, Ms. Roberson, or Superintendent Buss discriminated against her because of her race. Ms. Wallskog previously had applied for the position of administrative assistant in August 2002.[5]

For two weeks after her removal, Ms. Wallskog was told she didn't need to help out, answer the phones, or do anything. She wasn't allowed to enter the affirmative action office, and spent most of her time in the FMLA office learning about the family medical leave act. Ms. Wallskog was then assigned to clinical services under the supervision of Elaine Schucke, who held a lower position than Mr. Howe.

Ms. Wallskog's responsibilities as an administrative assistant included preparing offenders for release and helping them transition back into their communities. She also taught classes as part of implementing the Westville facility's transition program.[6] Ms. Wallskog's pay scale, hours, and benefits remained the same as an administrative assistant since it was also a professional,

---

[5]Ms. Wallskog testified at her deposition that her decision to apply for the administrative assistant position was involuntary: "I applied – I was told by Mr. Buss to apply for – take any– choose a position, but you got to leave affirmative action." Ms. Wallskog doesn't dispute, though, that she submitted an application for the position of administrative assistant on August 23, 2002 – two weeks before the audit and a month before the Superintendent Buss's letter of reassignment. Superintendent Buss's letter notes the fact that her application indicates she possessed the skills necessary for the administrative assistant position. The court agrees that Ms. Wallskog had no choice in her reassignment –effective September 27– but the record doesn't support a finding that her August 23, 2002 application was involuntary.

[6]Ms. Wallskog claims she wasn't responsible for helping offenders transition back into her community since her deposition testimony to this effect was in reference to her current position – transition/reentry program coordinator. Ms. Wallskog testified later in the deposition, though, that her duties as an administrative assistant include helping offenders transition. (Wallskog Dep. 89: 5-17 August 30, 2005).

administrative, and technical class, level 4 position under the state job classification system. There were two administrative assistant positions at the Westville Facility at this time. Ms. Wallskog wasn't given a computer and felt she was treated as a clerical secretary.

Under Mr. Howe, Tamara Lowry and Jackie Sallier — both white employees — received promotions, and as a result, salary increases. There is no evidence in the record that either Ms. Lowry or Ms. Sallier had her job performance called into question.[7]

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving

---

[7] Ms Wallskog also lists "Additional Actions taken by the Defendant," but doesn't explain the materiality of those additional actions. In her argument, she contends that her transfer was the materially adverse employment action she suffered, but she makes no reference to the additional actions. She cites these actions as examples of how she was treated less favorably, but points to no similarly situated employees who didn't engage in statutorily protected activities or who aren't members of her protected class. The court cannot say these additional allegations are material facts which create genuine issues that must be tried. *See* N.D.IND.L.R. 56.1.

party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") *quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999).

*The Retaliation Claim*

Ms. Wallskog contends that she was transferred to a different position in retaliation for complaining about Mr. Howe. Title VII prohibits employers from punishing employees for complaining about discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e-3(a). Ms. Wallskog can establish a prima facie case of retaliation using either the direct method or the indirect method. Sitar v. Indiana Dep't of Transp., 344 F.3d 720, 728 (7th Cir.2003). The direct method requires a plaintiff to show that: (1) she engaged in statutorily protected activity, (2) an adverse employment action taken against her by the employer, and (3) a

8

causal connection between the two. Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 903 (7th Cir. 2005). Under the indirect method, a plaintiff must show that: (1) she engaged in a statutorily protected activity, (2) she met the employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Id.[8]

Ms. Wallskog says she engaged in three protected activities: making recommendations based upon her investigation of Ms. Meyer's complaint against Mr. Howe; filing a merit complaint in early 2002; and filing charges of race discrimination and retaliation against Mr. Howe with the Michigan City Human Rights Commission. The court agrees that Ms. Wallskog engaged in a protected activity when she filed a merit complaint, to the extent that complaint alleges discrimination, Hunt-Golliday v. Metro. Water Reclamation Dist., 104 F.3d 1004, 1014 (7th Cir.1997), and when she filed charges of discrimination and retaliation with the EEOC. Payne v. Milwaukee County, 146 F.3d 430, 434 (7th Cir.1998). The court doesn't agree her participation as an internal investigator, in a claim against Mr. Howe on behalf of her employer, is a protected activity under Title VII.

---

[8] If the plaintiff establishes the prima facie case, the burden shifts to the employer to present evidence of a non-discriminatory reason for its employment action. If the employer meets its burden, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual. Moser v. Indiana Dept. of Corrections, 406 F.3d at 904. Ms. Wallskog hasn't presented sufficient evidence to establish a prima facie case under either method, so the court needn't reach the pretext analysis. Mannie v. Potter, 394 F.3d 977, 984 (7th Cir.2005).

*See, e.g.,* E.E.O.C. v. Total System Services, Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (the participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC"); *see also* Twisdale v. Snow, 325 F.3d 950, 952 (7th Cir. 2003).

Under both the direct and indirect methods, Ms. Wallskog must show she suffered an adverse employment action. An adverse employment action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Crady v. Liberty Nat'l Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir.1993). Ms. Wallskog was transferred from one professional, administrative, and technical class level 4 position to another, suffering no decrease in pay or benefits.

A nominally lateral transfer with no change in financial terms can amount to materially adverse employment action if the transfer significantly diminishes the material responsibilities or significantly reduces the employee's career prospects by preventing her from using her skill and experience. Moser v. Indiana Dept. of Corrections, 406 F.3d at 903; O' Neal v. City of Chicago, 392 F.3d 909, 911 (7th Cir. 2004). Mr. Wallskog says the transfer from affirmative action coordinator to administrative assistant was a "demotion" because (1) there are

10

substantial differences in authority and duties, (2) as an administrative assistant she was treated as a "clerical secretary," (3) unlike the affirmative action coordinator, there were two administrative assistants, and (4) as an administrative assistant, she reported to Ms. Schucke, an individual with less authority than Mr. Howe. The court doesn't agree.

Ms. Wallskog's duties changed, but she offers no evidence that an administrative assistant's duties are a material reduction in responsibility from her duties as an affirmative action coordinator. Ms. Wallskog's responsibilities as affirmative action coordinator included investigating allegations of discrimination, quality assurance as far as evaluating equal opportunity, teaching and promoting fairness and awareness regarding racial and gender issues within the facility. She also chaired an affirmative action committee, tracked medical disabilities, and maintained files and reports. As an administrative assistant, Ms. Wallskog was responsible for preparing offenders for release and helping them to transition back into their communities. She also taught classes as part of implementing the facility's transition program. Even when viewing the facts in the light most favorable to Ms. Wallskog, the court cannot say the transfer significantly diminished her material responsibilities.

The record does not support Ms. Wallskog's belief that she was transferred to a position that is the equivalent of a clerical secretary, and unsupported statements and subjective beliefs, without more, can't demonstrate an adverse employment action. *See* Herrnreiter v. Chicago Housing Authority, 315 F.3d 742,

11

745 (7th Cir. 2002).

Ms. Wallskog also says her transfer was a demotion because there are two administrative assistant positions and because she now reports to an individual with less authority. Because she doesn't explain how these changes in her work conditions alter her responsibilities or reduce her career prospects, she cannot show that the changes amount to adverse employment action. *See* Herrnreiter v. Chicago Housing 315 F.3d at 744 ("a transfer involving no reduction in pay and no more than a minor change in working conditions will not do either.")

Since Ms. Wallskog's transfer doesn't involve a demotion in form or substance, it is a purely lateral transfer and doesn't rise to the level of a materially adverse employment action. Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir.1996). Ms. Wallskog cannot establish a prima facie case of retaliation under either method.

The defendants also argue Ms. Wallskog can't establish a prima facie case of retaliation under the direct method because she hasn't shown a causal connection between a protected activity and an adverse employment action. To show a causal connection, Ms. Wallskog must present direct or circumstantial evidence that her merit or EEOC complaint resulted in her transfer. Rhodes v. Ill. Dept. of Transp., 359 F.3d 498, 504 (7th Cir.2004); Stone v. City of Indianapolis Public Util. Div., 281 F.3d 640, 644 (7th Cir.2002); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir.2000).

While the findings of the audit state "[Ms. Wallskog] complains to whomever

12

will listen about Mr. Howe and circumvents his office frequently," and Superintendent Buss's transfer letter cites Ms. Wallskog's "continual unwillingness to submit to the attempts by [Howe] to monitor and direct [her] work,"[9] neither the transfer letter or the findings mention her merit or EEOC complaint as a reason for her transfer. Because the court would have to presume the phrase "complains to whoever will listen" refers to her statutorily protected activities and that Superintendent Buss even relied upon her participation in those activities as the basis for transferring her, the court could not say there is direct evidence that he transferred her because of the protected activities she engaged in. *See* Hottenroth v. Vill. of Slinger, 388 F.3d 1015, 1028 (7th Cir.2004) (direct evidence is that evidence, if believed by the trier of fact, would prove discrimination without reliance on inference or presumption).

Circumstantial evidence that "point[s] directly to a discriminatory reason for the employer's action" can provide a basis for drawing an inference of retaliation under the direct method. Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th

---

[9]Superintendent Buss was responsible for the decision to transfer Ms. Wallskog. His testimony is that he "made the decision to reassign Ms. Wallskog" based upon the findings of the audit.  While Ms. Wallskog testifies that Superintendent Buss told her "he was supporting Harry Howe's decision," she also testifies that Superintendent Buss had the "final word" regarding her reassignment.  And when asked whether she had any evidence that Mr. Howe was involved in the decision she said "its been his ongoing behavior from – actually had increased from the time I investigated him."  The inference that Mr. Howe somehow influenced Superintendent Buss's decision simply because Ms. Wallskog felt Mr. Howe treated her differently is an unreasonable conjecture that is unsupported by the record.  *See* Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 591 (7th Cir. 1997) ("a party must present more than mere speculation or conjecture to defeat a summary judgment motion") *see also* Moser v. Indiana Dept. of Corrections, 406 F.3d at 905 ("Ms. Moser's speculation that [her fellow employee] manipulated Superintendent Commons raises no more than a metaphysical doubt as to whether the DOC would have disciplined Ms. Moser had she not complained").

Cir.2003). This evidence cannot support an inference of retaliation. Ms. Wallskog doesn't point to any evidence, or even allege that Superintendent Buss knew she had filed a merit or EEOC complaint against Mr. Howe.[10] She presents no evidence that the independent auditors — Ms. Brown and Ms. Gore — had a discriminatory intent in stating their findings. Moreover, Ms. Wallskog's ability to perform her job was called into question by the audit revealing inaccuracies in her investigative reports, inappropriate interview techniques, a difficulty in separating affirmative action issues from management issues, delay and misuse of overtime, and a lack of organization in maintaining records and documentation. Ms. Wallskog asks the court to infer that Superintendent Buss transferred her because of prior complaints she hasn't shown he knew about, rather than the numerous uncontradicted problems in her job performance. *See* Moser v Ind. Dept. of Corrections 406 F.3d at 904 (to prove causation plaintiff must show that the employer wouldn't have taken the adverse employment action "but for" her

---

[10] In addition, Ms. Wallskog engaged in the following exchange with defense counsel during her deposition:
    Q    Miss Wallskog, one of the claims that you're asserting in your lawsuit is Title 7 retaliation; is that correct?
    A    Yes
    Q    Now, what – And who do you believe was retaliating against you?
    A    Harry Howe
    Q    And –
    A    Mainly Harry Howe
    Q    Any anyone else that you believe acted in a retaliatory manner?
    A    It's Harry Howe. And I just felt other people were supporting him and treating me indifferent and causing adverse impact on my life here.
Whether Mr. Howe acted with retaliatory intent is irrelevant, because he wasn't the decision-maker.

protected activity).[11] No reasonable trier of fact could draw such an inference. *See* Gleason v. Mesirow Fin. Inc., 118 F.3d 1134, 1139 (7th Cir.1997) (summary judgment courts aren't required "to draw every conceivable inference from the record, [ ] only reasonable ones").

The defendants also argue Ms. Wallskog can't establish a prima facie case of retaliation under the indirect method because she didn't meet the employer's legitimate expectations and she wasn't treated less favorably than similarly situated employees who didn't engage in statutorily protected activity. The court agrees.

As already discussed, the record doesn't support that Ms. Wallskog was meeting the DOC's legitimate expectations. In addition, while Ms. Wallskog alleges Ms. Lowry and Ms. Sallier were treated more favorably, she hasn't pointed to any evidence showing they held equivalent positions, or were similarly situated employees with respect to performance, qualifications, and conduct. Walker v. Board of Regents of University of Wisconsin System, 410 F.3d 387, 396 (7th Cir. 2005). Ms. Lowry and Ms. Sallier may have both received a promotion, but Ms. Wallskog hasn't shown either engaged in conduct which brought her ability to perform her job into question.

Ms. Wallskog hasn't presented sufficient evidence under either method, so

---

[11] As discussed, Ms. Wallskog points to her performance evaluations as evidence she was meeting the DOC's legitimate performance expectations. The evaluations were performed more than a year before the audit and she hasn't provide any other evidence to contradict the independent audit's findings.

the defendants' are entitled to summary judgment on her retaliation claim.

*The Race Discrimination Claim*

Ms. Wallskog also contends that the defendants engaged in racial discrimination when they transferred her. Ms. Wallskog relies on the burden-shifting framework of <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802-805 (1973), so she has the initial burden of showing she met the employer's legitimate expectations, suffered an adverse employment action, and was treated less favorably than similarly situated employees who aren't members of her protected class. <u>Ajayi v. Aramark Business Services, Inc.</u>, 336 F.3d 520, 531 (7th Cir. 2003). Again, Ms. Wallskog wasn't meeting the DOC's legitimate expectations and her transfer doesn't constitute a material adverse employment action. In addition, she hasn't shown an employee outside her racial class whose conduct brought into question their ability to perform their job, but wasn't transferred, so she hasn't establish a prima facie case of racial discrimination. *See* <u>Ajayi v. Aramark</u>, 336 F.3d at 532.

CONCLUSION

For the foregoing reasons, the court grants the defendants' summary judgment motion [Doc. No. 50] with respect to all claims against all defendants.[12]

---

[12] Because Ms. Wallskog hasn't demonstrated a prima facie case of retaliation or race discrimination, the court needn't reach the pretext analysis. <u>Mannie v. Potter</u>, 394 F.3d at 984.

The clerk shall enter judgment accordingly.

SO ORDERED.

Entered:  March 8, 2006

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

17